IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **NATIONAL RESIDENT MATCHING PROGRAM,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Action No. 1:09CV00344 |
| ) | (PLF) |
| ) | |
| **ELECTRONIC RESIDENCY LLC, et ano.** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION**

The Court should dismiss plaintiff National Resident Matching Program's ("NRMP") Complaint for lack of personal jurisdiction.  Defendant Electronic Residency LLC's[1] contacts with the District of Columbia are so limited and sporadic that NRMP cannot satisfy its burden of establishing jurisdiction under the constitutional due process test or the requirements of either of the jurisdictional statutes—D.C. Code § 13-334 (the "general jurisdiction" statute) and D.C. Code § 13-423 (the "long-arm" statute).

**FACTS**

Defendant, Electronic Residency LLC ("ER") is an Ohio limited liability company. (Complaint at ¶¶ 3-4.)  Its sole owner and shareholder is Dr. Zahran Musa, an individual who has not been named as a defendant in this proceeding. (Complaint at ¶ 23.)  ER principally does two things:  provide detailed information on residency programs in the United States; and help prospective residents apply for residency positions.

---

[1] Match A Resident is the name of a service provided by ER.  It is not a separate legal entity.

ER's Match A Resident ("MAR") service works with individual medical students to identify potential residency programs around the United States that match those students' interests, criteria, and qualifications.  See Declaration of Dr. Zahran Musa in support of Motion to Dismiss ¶ 5.  The MAR service is based on a proprietary database developed and updated annually by ER.  Id. ¶ 6.  ER obtains the contact information it uses to submit candidate profiles through its own research into various residency programs around the country.  Id. ¶¶ 6, 7.  It does not use the Unfilled List or any other information from NRMP to construct or maintain its databases.  Id. ¶ 6.

ER's other principal service facilitates residency applicants' submission of applications to residency programs.[2]  On its members' behalf, ER arranges emails and faxes of short, one-page candidate profiles (called Applicant Credential Documents or ACD's) to residency programs in a candidate's desired specialty.  These ACD's are sent to programs that are willing to accept applications through ER, starting on 12:00 p.m. on the date of the "Scramble" application process described in Plaintiff's Complaint.  Id. ¶ 12; see also Complaint at ¶¶ 15-19.  Individual medical students and other medical residency applicants (including medical school graduates, graduates of foreign medical schools, and osteopathic students) constitute 100 percent of the clientele of ER.  Musa Declaration at ¶ 8.

All of ER's operations are based in a single office in Hudson, Ohio.  Id. at ¶ 2.  Neither Dr. Musa nor any of the other employees of ER has ever physically traveled to the District of Columbia for any purpose related to the business of ER.  Id. at ¶ 15.  ER's sole method of soliciting clients is through its websites, http://www.electronicresidency.com, and

---

[2] Contrary to NRMP's allegations, ER does not flood residency programs with undesired faxes and emails. In advance of the Scramble, ER contacts each residency program in its database to explain its service and to give the program an opportunity to opt out.  Approximately 70 percent of the residency programs in ER's database opt out and therefore receive no emails or faxes from ER.  Musa Decl. ¶ 11.

http://www.matcharesident.com.  Id. ¶¶ 8, 11.  These websites are publicly available and may be accessed from anywhere in the world, including the District of Columbia.

ER is in Ohio and its contact with the District of Columbia is scant.  Of the 5,595 subscriptions to the MAR service in the last three years, only 12 — or 0.2 percent of the total — have been from individuals located in the District of Columbia.  Id. at ¶ 20.  Similarly, over the last three years, ER has provided its ACD transmission services to a total of 981 applicants.[3]  Of these 981 applicants, only three were located in the District of Columbia.  Id. at ¶ 16.

ER has submitted candidate profiles to as many as 1,000 residency programs around the country in each year since 2006.  Id. at ¶ 10.  Of these programs, ER estimates that only 12 were located in the District of Columbia.[4]  Id. at ¶ 17.  In 2008, ER submitted somewhere in the neighborhood of 80,000 pages of candidate profiles to residency programs nationwide.  Id.  Only an estimated 300 pages were submitted to residency programs located in the District of Columbia.  Id.  Well less than one percent of ER's revenues have been derived from the District.

Plaintiff's Complaint contains no factual allegations relating to the propriety of this Court's personal jurisdiction over Defendants other than a conclusory statement that "Personal jurisdiction over Defendants is proper in this District," as well as the uncontroverted allegations that the Defendants offer their services through their respective websites and that Plaintiff's principal place of business is in the District of Columbia.  Complaint at ¶¶ 2, 7, 23.

---

[3]    Because some individual applicants repeatedly contracted for ER's services in multiple years, relevant statistics are provided in terms of the numbers of transactions instead of the numbers of individual clients.

[4]    The number of residency programs to which ER submitted applications is an estimate based on there being 40 programs in the District, and an average of 70 percent of all residency programs opting out of receiving ACD's from ER.

**ARGUMENT**

Personal jurisdiction depends upon state law, the application of which is subject to the constraints of constitutional due process. Gorman v. Ameritrade Holding Corp., 293 F.3d 506, 509 (D.C. Cir. 2002). The requirements of due process are met "when *in personam* jurisdiction is asserted over a nonresident corporate defendant that has 'certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Id. (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984)). District of Columbia law allows for both "general" and "particular" personal jurisdiction over foreign entities. Here, however, ER's contacts with the District is so *de minimus* and sporadic, that exercising jurisdiction would violate the "traditional notions of fair play and substantial justice" embodied in the 14th Amendment's Due Process Clause.

A. **The Due Process Clause prohibits this Court's exercise of "general" personal jurisdiction over the Defendants.**

While District of Columbia courts may exercise 'general jurisdiction' over foreign corporations as to claims not arising from the corporation's conduct in the District, such jurisdiction is only permissible if the defendant's business contacts with the District are "continuous and systematic." Gorman, 293 F.3d at 509 (citing, *inter alia*, D.C. Code § 13-334(a)).[5] Where, such as here, a defendant maintains an internet website by which it can

---

5     D.C. Code § 13-334(a) provides as follows:

> In an action against a foreign corporation doing business in the District, process may be served on the agent of the corporation or person conducting its business, or, when he is absent and can not be found, by leaving a copy at the principal place of business in the District, or, where there is no such place of business, by leaving a copy at the place or business or residence of the agent in the District, and that service is effectual to bring the corporation before the court.

"Although the provision facially concerns service of process, it has been construed to provide a general jurisdictional grant under certain circumstances." Atlantigas Corp. v. Nisource, Inc., 290 F. Supp. 2d 34, 50 n.12 (D.D.C. 2003). The District of Columbia Court of Appeals has held that the reach of "doing business" jurisdiction under § 13-334(a) is co-extensive with the reach of constitutional due process. Gorman, 293 F.3d at 509 (citing Hughes v. A.H. Robins Co., Inc., 490 A.2d 1140, 1148 (D.C. 1985)).

4

contract with clients in the District, assessing whether jurisdiction exists "requires an examination of the frequency and volume of the firm's transactions with District residents." Id. at 513.  For the existence of a website to be sufficient grounds for general jurisdiction, two criteria must be met:  "First, the website must be interactive. . . . An 'essentially passive' website through which customers merely access information" is insufficient. . . ." FC Investment Group, LC v. IFX Market, Ltd., 529 F.3d 1087, 1092 (D.C. Cir. 2008); see also Atlantigas Corp. v. Nisource, Inc., 290 F. Supp. 2d 34, 52 (D.D.C. 2003) (Friedman, J.)  Second, the business the defendant transacts with District residents must be sustained and "continuous and systematic." Id.  Both criteria need to be satisfied for jurisdiction to exist.  As this Court noted in Atlantigas, "[t]he questions at the core of all personal jurisdiction inquiries are whether the commercial actor that is the subject of the lawsuit 'purposefully availed itself of the privilege of conducting business in the forum state' and whether the defendant's conduct in connection with the forum is such that it "should reasonably anticipate being haled into court there.'"  290 F. Supp. 2d at 50 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-75).

      Merely having some interactivity features on a website is not necessarily sufficient.  In Atlantigas, the defendant operated an "electronic bulletin board" website that gas traders located in the District of Columbia "can and do use to schedule natural gas deliveries" on the defendant's interstate pipeline system.  290 F. Supp. 2d at 51.  After weighing the evidence, this Court concluded that, although the website at issue itself "is not wholly passive in nature," the defendant's "contracting on the [website] for transportation and storage services for one District of Columbia company over an eight-month period together with vague claims that two other District residents also contracted with [defendant] over its website at some point simply do not demonstrate a systematic and continuous contact with the forum." 290 F. Supp. 2d at 50.

5

Similarly, in FC Investment Group, LC v. IFX Markets, Ltd., this Court again held that the mere availability of the defendant's "interactive website" in the District did not necessarily allow the Court to exercise general personal jurisdiction. 479 F. Supp. 2d 30, 36-37 (D.D.C. 2007) (Friedman, J.), aff'd, 529 F.3d 1087 (D.C. Cir. 2008). In that case, this Court found that the quantum of utilization by District of Columbia residents was determinative:

> . . . . In this case, plaintiffs allege that only one District of Columbia resident has ever opened an online account with the defendant, and it was open for just six months in 2003. . . . As in Atlantigas, for the Court to assert general jurisdiction over the defendant based on a single, short-lived, and since-terminated customer relationship would "stretch the concept of general jurisdiction beyond what either the statute or due process permits." Id.

Here, ER's contacts with the District are limited to a small number of communications with a few individual clients and residency programs, and to those clients' and programs' opportunity to access information from ER's Ohio-based databases. These contacts provide no more of a basis for jurisdiction over the defendant than existed in Atlantigas or FC Investment. As described above, less than one percent of the applicants for whom ER submits ACD's are located in the District. Further, less than 1.5 percent of the total residency programs to which ER submits ACD's are found in the District and less than one percent of the total number of pages faxed and emailed by ER in any given year are destined for the District. Based on these *de minimus* figures, ER could not reasonably anticipate being haled into court in the District. Thus, because Defendants lack the "continuous and systematic" contacts with the District that are necessary for this Court to extend jurisdiction consistent with "traditional notions of fair play and substantial justice," this Court lacks general jurisdiction over the Defendants pursuant to D.C. Code § 13-334(a).

**B.    The Court lacks "specific" personal jurisdiction over the Defendants based on the District of Columbia's Long-Arm Statute.**

Nor is there specific jurisdiction over ER for purposes of the claims NRMP has asserted. The Court may exercise specific jurisdiction over a defendant if the plaintiff demonstrates that: (1) the District of Columbia's long-arm statute authorizes service of process on the defendant; and (2) the exercise of jurisdiction is consistent with the constitutional principles of due process. Bailey v. J & B Trucking Services, Inc., 577 F. Supp. 2d 116, 117 (D.D.C. 2008) (Collyer, J.).

The "long-arm" statute provides, in relevant part, as follows:

> (a)    A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's—
>
> (1) transacting any business in the District of Columbia;
>
> . . . .
>
> (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia.
>
> . . . .
>
> (b)    When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

D.C. Code § 13-423.

National Resident Matching Program bears the burden of establishing personal jurisdiction over ER. Estate of Esther Klieman v. Palestinian Authority, 547 F. Supp. 2d 8, 8 (D.D.C. 2008) (Friedman, J.). To meet that burden, a plaintiff must allege specific facts on which personal jurisdiction can be based; mere reliance on conclusory allegations alone is insufficient. Id. at 8-9. The Court "need not treat all of the plaintiffs' allegations as true.

Instead, the court 'may also receive and weigh affidavits and other relevant matter to assist in determining the jurisdictional facts.'" Id. (quoting Jung v. Assoc. of Am. Medical Colleges, 300 F. Supp. 2d 119, 127 (D.D.C. 2004)).

### 1. There is no jurisdiction under the "Transacting Any Business" Section of the Long-Arm Statute.

To establish personal jurisdiction under Section 13-423(a)(1), a plaintiff must demonstrate by a preponderance of the evidence that: (1) the defendant transacted business in the District; (2) the Plaintiff's claim arose from the business transacted in the District; (3) the Defendant had minimum contacts with the District; and (4) the Court's exercise of personal jurisdiction would not offend "traditional notions of fair play and substantial justice." FC Investment Group, 479 F. Supp. 2d at 38-39.

The "transacting business" prong of subsection (a)(1) "has been interpreted to be coextensive with the Constitution's due process requirements and thus to merge into a single inquiry." GTE New Media Servs., Inc. v. Bellsouth Corp., 199 F.3d 1343, 1347 (D.C. Cir. 2000). In FC Investment Group, this Court examined a long line of case law discussing how the quantity of phone calls, faxes, and electronic mail messages sent by defendants into the District may dictate the jurisdictional determination. The Court then concluded that the plaintiff's mere allegation that the defendant's agent made "regular" calls into the District of Columbia was unavailing. 479 F. Supp. 2d at 40-41 (citing, *inter alia*, Kopff v. Battaglia, 425 F. Supp. 2d 76, 79-82 (D.D.C. 2006) for the proposition that sending approximately 100 faxes into the District to solicit business is insufficient to constitute "transacting business"). Instead, the Court found that because London, where the Defendant's offices were based, was the "locus of the overwhelming number of operative events," the plaintiff had failed to establish that the defendant "transacted business" in the District. Id. at 40-41.

8

Here, application of the Court's analytical framework from FC Investment Group requires the conclusion that ER has not "transacted business" in the District.  As the accompanying Declaration of Dr. Musa indicates, ER's MAR service provides no basis for jurisdiction over ER.  Electronic Residency's only contact with the District in connection with that service is the incidental presence in the District of 12 of the nearly 5,600 users of the service over the last three years.  Furthermore, none of ER's MAR business with the District can be said to form a basis for any alleged injury to NRMP.  With respect to ER's delivery of client ACD's to residency programs, only 0.3 percent of ER's clients are located in the District, and only 12 of the up to 1,000 residency programs to which ER has submitted candidate profiles via facsimile and email are located in the District.

As in FC Investment Group, the overwhelming number of operative events related to ER's business occur elsewhere — in this case, at ER's offices in Ohio.  No ER employees have ever even visited the District for business purposes.  The fact that ER transmits a relatively miniscule number of emails and facsimiles into the District during one day each year hardly meets the threshold number of minimum contacts that would comply with "traditional notions of fair play and substantial justice."  Thus, the Court lacks specific personal jurisdiction over ER based on the "transacting business" prong of the District's long-arm statute.

> **2. Defendant ER does not satisfy the "tortious injury" requirement of the long-arm statute.**

To establish personal jurisdiction under Section 13-423(a)(4), a plaintiff must demonstrate by a preponderance of the evidence that: (1) it suffered a tortious injury in the District of Columbia; (2) the injury was caused by the defendant's act or omission outside the District; and (3) the defendant had one of the three enumerated contacts with the District. Bailey, 577 F. Supp. 2d at 118; Blumenthal v. Drudge, 992 F. Supp. 44, 53-54 (D.D.C. 1998)

9

(Friedman, J.). The enumerated contacts with the forum—or "plus factors"—need not relate to the act that caused the injury; only "some other reasonable connection between the defendant and the forum" is required. Bailey, 577 F. Supp. 2d at 118 (citing Blumenthal, 992 F. Supp. at 53-54).

ER does not live in, work in, or visit the District. Therefore, in order to gain jurisdiction under the "tortious injury" prong of the long-arm statute, NRMP must show that ER either (i) caused a tortious injury in the District by an act or omission here, or (ii) that ER caused a tortious injury here by an act or omission outside of the District *and* that ER regularly conducts business or engages in a persistent course of conduct here. Hayhust v. Calabrese, 782 F. Supp. 643 (D.D.C. 1992). Subsection (a)(4) of the long-arm statute has been narrowly construed such that its scope does not reach the outer contours of jurisdiction permissible under the Due Process Clause. See Crane v. Carr, 814 F.2d 758, 762 (D.C. Cir. 1987) ("The drafters of this provision apparently intended that the (a)(4) subsection would not occupy all of the constitutionally available space . . . This court has explicitly noted, moreover, that (a)(4) . . . may indeed stop short of the outer limit of the constitutional space.")

Even assuming NRMP suffered some injury in the District, any act by ER that purportedly caused that injury had to have occurred outside the District, since ER conducts all of its business from its office in Ohio. Thus, NRMP still must show that ER regularly conducts business here by a persistent course of conduct in order for it to be subject to jurisdiction here. For the reasons discussed in the previous section, NRMP cannot make such a showing — ER's contacts with the District are incidental and sporadic. See Kopff v. Battaglia, 425 F. Supp. 2d 76 (D.D.C. 2006). ER's exceedingly few contacts in the District during one day each year cannot reasonably be considered to constitute the engagement in, or solicitation of, "regular business" in

the District, nor a "persistent course of conduct" directed specifically at the District.  Further, because less than one percent of ER's total revenues have been derived from clients located in the District, ER cannot reasonably be said to have derived "substantial" revenue from its few District contacts.

Because Plaintiff cannot demonstrate by a preponderance of the evidence that ER regularly does or solicits business, engages in another persistent course of conduct, or derives substantial revenue from services rendered in the District, D.C. Code § 13-423(a)(4) does not provide a basis for this Court to exercise personal jurisdiction over Defendant ER.

## **CONCLUSION**

Because ER's contacts with the District of Columbia do not meet the level required under the District's long-arm statute or under the Due Process Clause, the Court should dismiss this action for lack of personal jurisdiction.

Respectfully submitted,

　　　/s/ David A. Wilson　　　　
David A. Wilson (DC Bar No. 430400)
Thompson Hine LLP
1920 N Street, NW
Suite 800
Washington, DC 20036
Telephone:  202-331-8800
Facsimile:  202-331-8330
*Counsel for Defendant Electronic Residency LLC and Match A Resident*