UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
NATIONAL RESIDENT MATCHING          )
PROGRAM,                            )
                                    )
            Plaintiff,              )
                                    )
    v.                              )    Civil Action No. 09-0344 (PLF)
                                    )
ELECTRONIC RESIDENCY LLC, *et al.*, )
                                    )
            Defendants.             )
_____)

OPINION

           This matter is before the Court on the motion of defendants Electronic Residency, LLC ("ER") and Match A Resident to dismiss the plaintiff's complaint for lack of personal jurisdiction.[1] For the reasons stated below, the Court will grant the motion.[2]

---

    [1]    ER contends that Match A Resident is a service offered by ER, not an independent entity, and so is improperly named as a defendant. Motion to Dismiss for Lack of Personal Jurisdiction at 1 n.1. As a result, throughout this Opinion, the Court treats ER and Match A Resident as a single entity encompassed by the abbreviation "ER" and referred to as "the defendant." Formally, of course, both MAR and ER remain named defendants in the plaintiff's complaint.

    [2]    The documents reviewed by the Court in considering the defendants' motion included the following: plaintiff's complaint ("Compl."); defendant's motion to dismiss for lack of personal jurisdiction ("Mot."); plaintiff's opposition to the motion to dismiss ("Opp."); defendant's reply to the plaintiff's opposition ("Reply"); Mot., Ex. 1 (declaration of Dr. Zahran Musa) ("Musa Decl."); Opp., Ex. 1 (declaration of Mona M. Signer) ("Signer Decl."); Opp., Ex. 2 (declaration of Matthew R. Sheldon) ("Sheldon Decl."); and Opp., Ex. 3 (declaration of Edwin L. Zalneraitis, M.D.) ("Zalneraitis Decl."); Opp., Ex. 4 (defendant's answers to plaintiff's first set of interrogatories ("Answers to Interrogs.").

I. BACKGROUND

National Resident Matching Program ("NRMP") is a not-for-profit corporation that conducts "the Match," an annual program through which senior medical students apply and are assigned to open medical residency positions. Signer Decl. ¶ 2. To participate in the Match, an applicant must register with NRMP and comply with the terms of a contractual agreement, the "Match Participation Agreement." Id. ¶ 6. Each applicant provides NRMP with a list ranking the residency programs to which the applicant wishes to be assigned; each residency program, in turn, submits to NRMP a list ranking the applicants that it is willing to hire. Id. ¶ 8. Once those lists are entered into a database, NRMP runs a computer program that pairs applicants with open positions in a manner calculated to produce "optimal matches of applicants to programs." Id. ¶ 10.

After the Match is complete, NRMP initiates "the Scramble," a process by which applicants who did not receive a residency during the Match may submit applications to residency programs that still have unfilled positions. Signer Decl. ¶ 13. The Scramble begins the day after the Match concludes, when NRMP makes available on its website a document, known as the Unfilled List, that identifies each residency program left with vacancies after the Match. Id. ¶ 11. Residency applicants who did not receive a placement during the Match have 48 hours in which to secure one in the Scramble. Id. ¶ 14.

The number of unmatched applicants participating in the Scramble typically far outstrips the number of unfilled residency positions. Id. ¶ 16. Applicants may submit formal applications during the Scramble only by using the Electronic Residency Application Service ("ERAS"), which is affiliated with the Association of American Medical Colleges. Id. ¶ 17. The

number of applications that an individual may submit through ERAS is limited to a maximum of forty-five. Id. If an applicant wishes to contact more than forty-five programs, however, he or she may attempt to send informal applications or letters of interest directly to those programs via fax or email. Id. ¶ 18; Musa Decl. ¶ 11.

Defendant Electronic Residency, LLC ("ER"), a for-profit company whose principal place of business is located in Ohio, Musa Decl. ¶ 2, offers to assist applicants during the Match and Scramble process by providing two types of services in exchange for fees. The first, called Match A Resident ("MAR"), provides applicants with "customized residency program lists that match the [applicants'] interests, qualifications and credentials . . . with particular residency programs." Musa Decl. ¶ 5. ER develops those customized lists by relying on a "proprietary database" containing periodically updated information about each residency program: its "application deadline, the percentage of foreign medical graduates in the program, what kinds of visas the program sponsors, whether previous U.S. clinical experience is required, minimum academic requirements." Id. ¶ 6. Twelve residents of the District of Columbia used the MAR service in 2007 and 2008. Answers to Interrogs. at 2.

The second type of service provided by ER is distinct from MAR, and applicants wishing to use both services must register for each separately. Musa Decl. ¶¶ 8-11. Applicants who pay for this second service arrange for ER to "transmit[ their] applications to residency programs by fax and email on Scramble day." Id. ¶ 11. As soon as the Scramble begins and students are allowed to apply for unfilled residencies, ER begins sending abbreviated, informal applications by email or fax from its clients to residency programs. Id. ¶¶ 12-13. In the past

3

three years, at least three residents of the District of Columbia have registered for ER's assistance with the Scramble process. Musa Decl. ¶ 16.

During each year's Scramble, ER contacts between 800 and 1,000 residency programs on behalf of its clients. Musa Decl. ¶ 17. At least twelve of the residency programs to which ER sends information are located in the District of Columbia. Id. ER estimates that it sends roughly 1,700 faxes and 1,825 emails each year to those District programs. Answers to Interrogs. at 5.

Every year since 2004 — the year that ER was founded — ER's owner and president, Dr. Zahran Musa, has registered with NRMP to participate in the Match. Musa Decl. ¶¶ 3, 5. By doing so, he has gained online access to NRMP's Unfilled List, which may be viewed by any NRMP registrant on the first day of the Scramble. Signer Decl. ¶ 11. Although Dr. Musa claims that he registers for the Match in an attempt to secure a residency for himself, see Musa Decl. ¶ 3, he has failed each year since 2004 to submit to NRMP a list ranking the residency programs to which he would like to apply, which means that he has never actually been eligible to participate in the Match. Signer Decl. ¶ 26.

On February 20, 2009, NRMP filed its complaint in this matter, alleging four counts of misconduct by ER: conspiracy to defraud, Compl. ¶¶ 28-31; civil conspiracy, id. ¶¶ 32-34; tortious interference, Compl. ¶¶ 35-40; and trade secret misappropriation, id. ¶¶ 41-49. According to NRMP, Dr. Musa, acting as an agent of ER, has registered for the Match every year since 2004 under false pretenses, gaining access to the Unfilled List, and then used his knowledge of the list to "further the business objectives of Electronic Residency." Compl. ¶ 25.

4

## II. DISCUSSION

ER contends that it is not subject to personal jurisdiction in the District of Columbia and therefore that the plaintiff's complaint should be dismissed under Rule 12(b)(2) of the Federal Rules of Civil Procedure. It is the plaintiff's burden to make a *prima facie* showing that this Court has personal jurisdiction over a defendant. See First Chicago Int'l v. United Exch. Co., 836 F.2d 1375, 1378-79 (D.C. Cir. 1988). "Plaintiff must allege specific facts on which personal jurisdiction can be based; [it] cannot rely on conclusory allegations." Moore v. Motz, 437 F. Supp. 2d 88, 91 (D.D.C. 2006) (citations omitted). Furthermore, when considering personal jurisdiction, the Court need not treat all of the petitioner's allegations as true. Instead, the Court "may [also] receive and weigh affidavits and other relevant matter to assist in determining the jurisdictional facts." Jung v. Assoc. of Amer. Medical Colleges, 300 F. Supp. 2d 119, 127 (D.D.C. 2004) (quoting United States v. Philip Morris Inc., 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000)); see also Brunson v. Kalil & Co., 404 F. Supp. 2d 221, 223 (D.D.C. 2005).

NRMP contends that the Court may exercise personal jurisdiction over ER pursuant to any one of three provisions of the District of Columbia Code: D.C. Code § 13-423(a)(1) (specific jurisdiction over defendants who transact business in the District); D.C. Code § 13-423(a)(4) (specific jurisdiction over defendants "causing tortious injury" in the District); or D.C. Code § 13-334(a) (general jurisdiction over defendants "doing business" in the District). See Opp. at 11, 16, 19. The Court considers each provision in turn.

A. D.C. Code § 13-423(a)(1)

Section 13-423 of the District of Columbia long-arm statute provides:

(a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's —

(1) transacting any business in the District of Columbia; . . .

* * *

(b) When jurisdiction over a person is based solely on this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

D.C. CODE § 13-423. To establish personal jurisdiction under this subsection, a plaintiff must demonstrate that: (1) the defendant transacted business in the District of Columbia; (2) the claim arose from the business transacted in the District; (3) the defendant had minimum contacts with the District; and (4) the Court's exercise of personal jurisdiction would not offend "traditional notions of fair play and substantial justice." Atlantigas Corp. v. Nisource, Inc., 290 F. Supp. 2d 34, 43 (D.D.C. 2003) (quoting Dooley v. United Technologies Corp., 786 F. Supp. 65, 71 (D.D.C. 1992)). This subsection of the long-arm statute permits the exercise of personal jurisdiction to the full extent permitted by the Due Process Clause of the Constitution. See id.; see also First Chicago Int'l v. United Exch. Co., 836 F.2d at 1377; Envtl. Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc., 355 A.2d 808, 810-11 (D.C. 1976) (*en banc*). The constitutional touchstone of the due process determination is "whether the defendant purposefully established minimum contacts in the forum state," Asahi Metal Industry Co. v. Superior Court, 480 U.S. 102, 108-09 (1987) (internal citations and emphasis omitted), or "purposefully availed itself of the privilege of conducting business in the forum state," and whether the defendant's conduct in

connection with that forum is such that it "should reasonably anticipate being haled into court there." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-75 (1985) (internal citation and quotation marks omitted); see also United States *ex rel.* Miller v. Bill Harbert Int'l Constr., Inc., No. 08-5390, 2010 WL 2487962, at *13 (D.C. Cir. June 22, 2010).

"While the long-arm statute is interpreted broadly and factual disputes are to be resolved in favor of the plaintiff, plaintiff must allege some specific facts evidencing purposeful activity by the defendant in the District of Columbia by which it invoked the benefits and protections of the District's laws." Atlantigas Corp. v. Nisource, Inc., 290 F. Supp. 2d at 44 (citing First Chicago Int'l v. United Exch. Co., 836 F.2d at 1378); see also Edmond v. U.S. Postal Serv. Gen. Counsel, 949 F.2d 415, 428 (D.C. Cir. 1991); United States v. Phillip Morris, Inc., 116 F. Supp. 2d at 121. In addition, because a court in the District of Columbia may exercise specific jurisdiction over a non-resident defendant "only [for] a claim for relief arising from the specific acts enumerated in [the statute] . . . ," D.C. CODE § 13-423(b), the plaintiff's jurisdictional allegations must arise from the same conduct of which it complains. See Atlantigas Corp. v. Nisource Inc., 290 F. Supp. 2d at 44; see also Willis v. Willis, 655 F.2d 1333, 1336 (D.C. Cir. 1981); Dooley v. United Technologies Corp., 786 F. Supp. at 71; LaBrier v. A.H. Robins Co., Inc., 551 F. Supp. 53 (D.D.C. 1982). "The claim itself must have arisen from the business transacted in the District of Columbia or there is no jurisdiction." Novak-Canzeri v. Al Saud, 864 F. Supp. 203, 206 (D.D.C. 1994).

None of the activities identified by NRMP as constituting business transacted by ER in the District of Columbia meets all of the statutory and constitutional requirements for the exercise of personal jurisdiction by this Court. NRMP points to three categories of activities as

7

evidence that ER has transacted business in the District of Columbia: (1) ER has provided either its MAR or its application transmission services to approximately fifteen District of Columbia residents since 2007, Opp. at 12; (2) ER sends many faxes and emails to D.C. residency programs every year, id. at 13; and (3) Dr. Musa, acting as ER's agent, has repeatedly registered for the Match on the website of NRMP, which is located in the District of Columbia. Id. at 14. The first two of those activities may well constitute transacting business in the District of Columbia, but they do not serve to confer personal jurisdiction over ER in this case because NRMP has failed to show that its claims of conspiracy to defraud, civil conspiracy, tortious interference, and trade secret misappropriation "arise from" those activities.

NRMP's sole attempt to explain the purported connection between its claims and either ER's provision of services to fifteen District of Columbia residents or ER's transmission of emails and faxes to D.C. residency programs is its statement that "[d]efendant['s] services, offered through [its] websites, relate directly to the Match and Scramble, and form the basis for NRMP's claims that [d]efendant['s] services improperly take advantage of NRMP's confidential information." Opp. at 11. That statement is entirely conclusory. The plaintiff has made no specific allegations explaining how ER's "services improperly take advantage of NRMP's confidential information," and the Court therefore has no means by which to determine whether NRMP's claims have a discernible relationship to the services provided by ER to District of Columbia residents or to ER's communications with D.C. medical programs. Such vague and conclusory allegations do not suffice to demonstrate that a defendant is subject to personal jurisdiction in a particular forum. See, e.g., Agee v. Sebelius, 668 F. Supp. 2d 1, 5-6 (D.D.C. 2009); see also Atlantigas Corp. v. Nisource, Inc., 290 F. Supp. 2d at 45-46.

In contrast, NRMP's claims have an obvious relationship to Dr. Musa's accessing of the Unfilled List by registering on NRMP's website; NRMP contends that Dr. Musa acquires the Unfilled List in this manner in order to distribute it or use it in a manner contrary to law. See Compl. ¶¶ 29, 33, 37, 47. But while NRMP's claims clearly "arise from" this alleged activity, Dr. Musa's registration for access to NRMP's website, and his viewing of the Unfilled List on that website, do not constitute "transacting any business in the District of Columbia." NRMP characterizes the actions taken by Dr. Musa in registering for the Match and accessing the Unfilled List online as "contact[ing] NRMP (located within the District of Columbia)." Opp. at 14. But the fact that an out-of-forum defendant sends communications to a plaintiff who happens to be located in a particular forum does not, by itself, establish personal jurisdiction there. See, e.g., FC Inv. Group LC v. IFX Markets, Ltd., 479 F. Supp. 2d 30, 39 (D.D.C. 2007) ("'[R]egular' phone calls into the District from elsewhere do not constitute 'transacting business' in the District of Columbia."), aff'd, 529 F.3d 1087 (D.C. Cir. 2008).

Perhaps recognizing this, NRMP presents Dr. Musa's annual registration for the Match as his entry into repeated contracts with the plaintiff. See Opp. at 14. A nonresident defendant's entry into a contract, however, only subjects the defendant to personal jurisdiction in the District of Columbia if the contract has a "substantial connection" with that forum. Helmer v. Doletskaya, 393 F.3d 201, 205 (D.C. Cir. 2004). The mere fact that the other party to the contract is a District of Columbia resident does not create a "substantial connection," id. at 206-07; the Court "must evaluate the 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing' to determine

9

whether the defendant 'purposefully established minimum contacts within the forum.'" Id. at 205 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 479 (1985)).

In this case, the relevant factors indicate that Dr. Musa did not purposefully avail himself of the privilege of transacting business in the District of Columbia when he registered for the Match. The contract into which he entered involved no negotiations whatsoever and had not been customized in any way to reflect a distinctive relationship between him and NRMP; it was a contract of adhesion — the Match Participation Agreement that was published on NRMP's website and that was implicitly accepted by any person who registered for the Match. See Signer Decl., Ex. A. The future consequences of that contract for the District of Columbia were nonexistent: because Dr. Musa, so far as the record shows, did not request that NRMP match him to any residency programs, see Signer Decl. ¶ 26, NRMP had no continuing obligations to Dr. Musa in particular that were to be performed in the District of Columbia. NRMP merely provided Dr. Musa with online access to the same information that was made available to thousands of other registrants. The parties had no "course of dealing," in- or outside of the District.

NRMP points out that its Participation Agreement contains an arbitration clause specifying that disputes are to be arbitrated in the District of Columbia or "at such other location as mutually agreed upon by the parties," and that any such arbitration is, under the contract, to be conducted pursuant to District of Columbia law. Signer Decl., Ex. A at 23; see Opp. at 14-15. As NRMP acknowledges, however, such contract provisions merely "inform" the Court's personal jurisdiction analysis; they are not determinative. Id. at 14 (citing Jung v. Ass'n of Am. Med. Colleges, 300 F. Supp. 2d at 132); see also SEC v. Lines Overseas Mgmt., Ltd., Civil

10

Action No. 04-0302, 2005 WL 3627141, at *6 (D.D.C. Jan. 7, 2005).  Furthermore, it can hardly be said that a party's acquiescence to an arbitration provision contained in a contract of adhesion evinces an intent by that party to avail itself of the privilege of doing business in the forum designated as the place of arbitration.  When weighed against the fact that the contract in question was an unnegotiated form agreement that did not create continuing consequences in the District of Columbia, the arbitration and choice-of-law provisions are insignificant.  Dr. Musa's annual registration for the Match does not have a "substantial connection" to the District of Columbia and therefore cannot serve as the basis for this Court's exercise of personal jurisdiction over him.

### B.  D.C. Code § 13-423(a)(4)

Under Section 13-423(a)(4) of the District of Columbia Code, an entity is subject to personal jurisdiction within the District if it

> caus[es] tortious injury in the District of Columbia by an act or omission outside the District of Columbia [and also] regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia.

D.C. Code § 13-423(a)(4).  NRMP argues "that it has been injured in the District of Columbia as a result of Defendants' conduct."  Opp. at 17.  That declaration misstates the requirements of the long-arm statute.  It is not sufficient for NRMP to have "been injured" by ER's conduct; the injury must be "tortious."  NRMP has failed to identify any tortious injury inflicted on it by ER.

NRMP claims that ER has injured it by "transmitt[ing] hundreds of thousands of e-mails and faxes to medical institutions all over the United States in connection with the Scramble," Opp. at 17, "severely disrupting" the work of those medical institutions and causing

11

them to withdraw from participation in the Scramble. Id. at 5-6. ER's intensive targeting of medical institutions for communications may well cause problems for NRMP, but the sending of large numbers of faxes and emails is not in and of itself a tortious activity, nor is it apparently connected in any way to NRMP's legal claims. NRMP nowhere alleges that ER uses the Unfilled List to determine which medical institutions to target for communications — in fact, NRMP says quite the opposite. One of the plaintiff's own affiants avers that ER's inundation of residency programs with applications and other communications is problematic precisely because it is *indiscriminate*: "[F]or-profit businesses, such as the defendants in this case, send many completely unnecessary and unwanted e-mails and faxes, because they send e-mails and faxes to *all* residency programs, whether they have unfilled positions or not." Zalneraitis Decl. ¶ 8 (emphasis in original). If ER's access to the Unfilled List does not affect the rate at which it contacts residency programs, it is unclear how that access is connected to the injury asserted by the plaintiff. Because the injury NRMP claims to have suffered in the District of Columbia is apparently unrelated to any torts allegedly committed by ER, that claimed injury cannot serve as the basis for jurisdiction under the District of Columbia's long-arm statute.

*C. D.C. Code § 13-334(a)*

The plaintiff also contends that this Court may exercise personal jurisdiction over ER pursuant to D.C. Code § 13-334(a), which "confer[s] jurisdiction upon trial courts [in the District of Columbia] over foreign corporations doing substantial business" in the District. Gonzalez v. Internacional de Elevadores, 891 A.2d 227, 233 (D.C. 2006). Section 13-334(a) provides:

> In an action against a foreign corporation doing business in the District, process may be served on the agent of the corporation or person conducting its business, or, when he is absent and can not be found, by leaving a copy at the principal place of business in the District, or, where there is no such place of business, by leaving a copy at the place of business or residence of the agent in the District, and that service is effectual to bring the corporation before the court.

D.C. CODE § 13-334(a). This provision permits courts to exercise "general jurisdiction" over a foreign corporation as to claims not arising from the corporation's conduct in the District of Columbia, so long as the corporation is doing substantial business in the District of Columbia. FC Inv. Group LC v. IFX Markets, Ltd., 529 F.3d at 1091; Gonzalez v. Internacional de Elevadores, 891 A.2d at 233. But in order for a court to invoke such jurisdiction over a defendant under Section 13-334(a), the statute's service requirements must have been met; the defendant must have been "personally served [with process] in the District of Columbia." Gonzalez v. Internacional de Elevadores, 891 A.2d at 233.

In this case, the plaintiff served ER in Ohio. See Return of Service/Affidavit, Docket Nos. 8, 9. Because ER was not served in the District of Columbia, it is not subject to jurisdiction under Section 13-334(a). See Gowens v. Dyncorp, 132 F. Supp. 2d 38, 42 (D.D.C. 2001) (defendant served in Virginia not subject to general jurisdiction under Section 13-334); Gonzalez v. Internacional de Elevadores, 891 A.2d at 233; Everett v. Nissan Motor Corp., 628 A.2d 106, 108 (D.C. 1993) (defendant served in California not subject to general jurisdiction under Section 13-334).

III. CONCLUSION

For the foregoing reasons, the Court concludes that it lacks personal jurisdiction over ER, and the plaintiff's complaint must be dismissed. An Order consistent with this Opinion shall issue this same day.

SO ORDERED.

/s/
PAUL L. FRIEDMAN
United States District Judge

DATE: July 6, 2010